WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Monterra Apartments Limited Liability Partnership,<br><br>Plaintiff,<br><br>v.<br><br>Sequoia Insurance Company, a foreign corporation,<br><br>Defendant. | No. CV11-1236-PHX-DGC<br><br>**ORDER** |

Defendant Sequoia Insurance Company ("Sequoia") denied coverage under a policy issued to Plaintiff Monterra Apartments Limited Liability Partnership ("Monterra") after Monterra alleged damage to an apartment complex as a result of a hailstorm. After the denial of coverage, Monterra brought this action against Sequoia. Both parties have submitted cross-motions for summary judgment on the issue of whether the policy extended coverage in the event hail was the partial, and not the sole, cause of the damage. Docs. 25, 27. Neither party has requested oral argument. For the reasons that follow, the Court holds that the policy provides coverage when hail is either the sole or partial cause of loss.

**I.  Background.**

In September 2010, Monterra purchased an apartment complex located at 2925 North Greenfield Road in Phoenix, Arizona. Doc. 25 at 2. Sequoia issued a policy to Monterra for the period September 23, 2010 to September 23, 2011. *Id.*

Twelve days later, on October 5, 2010, the Phoenix metro area experienced a severe hailstorm. *Id.* at 3. In December 2010, Monterra submitted a notice of loss to Sequoia, through its broker, stating the apartment complex suffered "[e]xtensive damage from hail storm." *Id.* at 2. Monterra alleged that the roofs started leaking after the storm, causing interior water damage in multiple locations. *Id.* at 3. Sequoia sent an adjustor to investigate. *Id.* at 2–3. The adjustor had the roofs inspected and could not find damage to the roof from hail. *Id.* at 3. Instead, the inspector attributed the damage to the roof to, among other things, wear and tear, bird guano, faulty installation and repair techniques, and inadequate maintenance. *Id.* at 3–4. The adjustor concluded that the poor condition of the roof, not the hail, caused the interior water damage. *Id.* at 4.

On February 1, 2011, Sequoia determined that no coverage existed for the loss and denied Monterra's claim on the basis of the adjustor's findings and Sequoia's interpretation of its policy. *Id.* Monterra then hired its own adjustor who provided an estimate to repair the roof. *Id.* at 5. The adjustor also included photographs that allegedly show damage caused by hail. *Id.* Sequoia's inspector reviewed the damage in the photographs and determined that it was not the result of hail, but was made by mechanical means. *Id.* at 6. After considering the material presented by Monterra's adjustor, Sequoia informed Monterra again that it would deny coverage. *Id.*

## II.  Standards for Summary Judgment.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment. The disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.     Standards for Interpreting an Insurance Policy.**

Both parties appear to agree that the Court should apply Arizona law to interpret the insurance contract in this diversity action. Docs. 25 at 7; 26 at 3. In Arizona, interpretation of a contract is a matter of law. *Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1132 (Ariz. 1982). Insurance policy provisions are to be construed in a manner consistent with their plain and ordinary meaning. *Id.*

In the absence of limiting language, an insured is entitled to recover if a covered event is the proximate cause of the loss, even though there are other contributing causes. *Koory v. W. Cas. & Sur. Co.*, 737 P.2d 387, 390 (Ariz. 1987) (en banc). "[The insurer] may lawfully exclude certain risks from the coverage of its policy, and where damage occurs . . . under circumstances as to which the policy excludes coverage, there is no coverage." *Sec. Ins. Co. of Hartford v. Andersen*, 763 P.2d 246, 249 (Ariz. 1988) (en banc) (quoting *Pac. Indem. Co. v. Kohlhase*, 455 P.2d 277, 279 (Ariz. Ct. App. 1969)). If an insurer desires to limit its liability under a policy, it should employ language which clearly and distinctly communicates to the insured the nature of the limitation. *Sparks*, 132 Ariz. at 535. Where an exclusion is narrow, specifically delineates what is and what is not covered, and unambiguous, the Court must apply the exclusion. *Sec. Ins. Co. of Hartford*, 763 P.2d at 249.

Ambiguity in an exclusionary clause in an insurance contract is construed against the insurer. *Millar v. State Farm Fire and Cas. Co.*, 804 P.2d 822, 824 (Ariz. Ct. App. 1990). In determining whether there is such an ambiguity, the language of the contract should be examined from the viewpoint of one not trained in law or the insurance business. *Sparks*, 132 Ariz. at 535. A court may not invent ambiguity to provide coverage where there is none. *Millar*, 804 P.2d at 824.

**IV.     The Sequoia Policy.**

The Sequoia Policy is an all risk policy. Sections I.A and I.A.3 embody this concept:

SECTION I – PROPERTY

A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

. . .

    3.    Covered Cause of Loss

Risks of direct physical loss unless the loss is:

a. Excluded in Paragraph B. Exclusions in Section I; . . .

Doc. 25-2 at 5–6.  The policy covers all risks of direct physical loss except those excluded.  If a risk of loss is excluded, the policy does not provide coverage.  Under *Koory*, damage caused by hail, partially or otherwise, would be covered by the policy unless expressly excluded.

The policy's exclusions are located in Section I.B.  Section I.B has five sections.  Sequoia argues that Sections I.B.1, I.B.2, and I.B.3 exclude coverage by hail under various theories.  The Court does not agree.

**A.    Section I.B.1 – Concurrent Cause Exclusion.**

Sequoia argues that the policy contains a concurrent cause exclusion that precludes coverage for damage partially caused by hail as a matter of law.  A concurrent cause exclusion excludes coverage for particular causes even though they occur concurrently with a covered cause.  *See Millar*, 804 P.2d at 824; *see also Cooper v. Am. Family Mut. Ins. Co.*, 184 F. Supp. 2d 960, 962 (D. Ariz. 2002).  Arizona courts enforce concurrent cause exclusions.  *Millar*, 804 P.2d at 824; *Cooper*, 184 F. Supp. 2d at 962.

Sequoia's policy contains a concurrent cause exclusion in Section I.B.1: "1.  We

will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Doc. 25-2 at 17. The causes then listed under Section I.B.1 are Ordinance or Law, Earth Movement, Governmental Action, Nuclear Hazard, Power Failure, War and Military Action, Water,[1] and Certain Computer-Related Losses. *Id.* at 17–19.

Sequoia does not allege that one of these specified causes contributed to Monterra's loss. Sequoia instead argues that causes identified in Section I.B.2.l, such as wear and tear, and Section I.B.3, such as inadequate maintenance, were the exclusive or contributing cause of the loss. But Sections I.B.2.1 and I.B.3 do not contain a concurrent clause exclusion, and they clearly are separate from the exclusion in Section I.B.1. The concurrent cause exclusion of the policy therefore provides no basis for denying coverage.

**B.     Specific Exclusions.**

Sequoia claims that the loss is excluded due to wear and tear, and/or inadequate maintenance. Section I.B.2.l of the policy discusses wear and tear. Section I.B.3 of the policy discusses inadequate maintenance.[2]

**1.     Wear and Tear.**

The relevant section of the policy states:

> [I.]B. Exclusions
>
> . . .
>
> 2. We will not pay for loss or damage caused by or resulting from any of the following:

---

[1] This exclusion, dealing with floods, tidal waves, mudslides, back-up from a sewer or drain, or groundwater (Doc. 25-2 at 18, ¶ (g)), does not apply to the current controversy.

[2] Sequoia alleges that other causes within these two subsections are additional reasons to deny coverage, i.e. bird guano, settling and cracking under Section I.B.2, or defective repair under Section I.B.3, etc. For reasons to be explained, the Court is not persuaded.

- 5 -

>               . . .
>
>               l. Other Types of Loss
>
>                   (1) Wear and tear;
>               . . .
>
>       But if an excluded cause of loss that is listed in Paragraphs (1) through (7) above results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

Doc. 25-2 at 17, 19–20.

The policy clearly and unambiguously excludes coverage where wear and tear is the sole cause of damage. The last sentence quoted above clearly states, however, that the exclusion of coverage in Section I.B.2.l does not apply – in other words, the policy provides coverage – where an "excluded cause of loss" results in a "specified cause of loss." The phrase "specified cause of loss" is defined in Section I.H.11 to include "hail." Therefore, replacing "excluded cause of loss" with "wear and tear," and "specified cause of loss" with "loss from hail," the clause reads: "if [wear and tear] results in [loss from hail], we will pay for the loss or damage caused by that [hail]." Thus, when wear and tear contribute to damage by a hailstorm, the policy provides coverage for the hail damage. Further, the policy covers any ensuing damage from the hail, such as water penetrating the roof as a result of the hail.[3]

The parties dispute whether hail or wear and tear damaged the roof or resulted in moisture penetrating the roof. This was a key point of disagreement between their adjustors and is a factual issue that must be resolved by the jury.

---

[3] The Limitations in section I.A.4.a.(5)(a) of the policy prevent coverage for damage to interior walls caused by leaking rain unless the building first sustains damage by a covered cause of loss to the roof. Doc. 25-2 at 6. As explained above, the policy provides coverage when a covered cause like hail is the culprit.

**2.     Inadequate maintenance.**

The relevant section of the policy states:

> [I.]B. Exceptions . . .
>
>     3. We will not pay for loss or damage caused by or resulting from any of the following Paragraphs a through c. But [i]f an excluded cause of loss that is listed in Paragraphs a through c results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.
> . . .
>
>         c.     Negligent Work
>
>             Faulty, inadequate or defective ... Maintenance;

Doc. 25-2 at 17, 21. For purposes of this issue, the "excluded cause of loss" can be stated as "inadequate maintenance." The "Covered Cause of Loss" can be stated as "hail" or "loss from hail" because hail presents a "risk of physical loss" and is not excluded by the policy. Doc. 25-2 at 6, ¶ I.A.3.[4] Using these substitutes, the key provision reads: "if [inadequate maintenance] results in [loss from hail], we will pay for the loss or damage caused by [the hail]. This produces the same result as the wear and tear exclusion discussed above.[5] Thus, when inadequate maintenance permits hail damage to occur, the policy provides coverage for the hail damage.

The parties dispute whether hail or inadequate maintenance damaged the roof or resulted in moisture penetrating the roof. This factual issue is for the jury.

**V.     Conclusion.**

The policy provides coverage from damage by hail whether the damage is the sole or partial cause of the loss. The policy does not provide coverage where hail is not

---

[4] Section I.B.3 excludes "weather conditions," which would include "hail," only if the weather conditions combine with a cause excluded in Section I.B.1, none of which applies here. Thus, hail is not excluded. Doc. 25-2 at 21.

[5] Sequoia, in its motion to dismiss, agrees that the two provisions work in a similar fashion. Doc. 25 at 15–16.

- 7 -

responsible for the loss. Because factual issues preclude the Court from granting summary issue for either party, both motions will be denied, but the Court's construction of the policy should provide guidance for the parties.

**IT IS ORDERED:**

1. Defendant's motion for partial summary judgment (Doc. 25) is **denied**.

2. Plaintiff's cross-motion for partial summary judgment (Doc. 26) is **denied**.

Dated this 12th day of March, 2012.

_____
David G. Campbell
United States District Judge